DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
      v.                         )    2014-cr-32
                                 )
DAVIDSON L. ALFRED,              )
                                 )
            Defendant.           )
                                 )
_____)

ATTORNEYS:

**Ronald Sharpe, United States Attorney**
**Kim L. Chisholm, AUSA**
United States Attorney's Office
St. Thomas, V.I.
    *For the plaintiff,*

**George H. Hodge, Jr., Esq.**
St. Thomas, V.I.
    *For the defendant Davidson L. Alfred.*


**ORDER**

Before the Court are the motions of defendant Davidson Alfred ("Alfred") to suppress all evidence obtained from Alfred after he was detained, including a statement made to the police and physical evidence.

I.    **FACTUAL AND PROCEDURAL HISTORY**

Sylvester Samuel and his wife (the "Samuels") filed a complaint against Alfred with the Virgin Islands Police Department ("VIPD"). The Samuels alleged that Alfred was forging checks against their accounts.  The officer that took the

*United States v. Alfred*
14-cr-32
Order
Page 2

complaint relayed that information to Detective Derrick
Bougouneau.

Thereafter, on Tuesday, April 15, 2014, in the morning,
Alfred entered Banco Popular de Puerto Rico in Red Hook, St.
Thomas, U.S. Virgin Islands ("BPPR Red Hook").  While in BPPR
Red Hook, Alfred attempted to cash a check.  The check was for
$3,500 to be drawn against the account of Sylvester Samuel and
paid to Alfred. The BPPR Red Hook bank supervisor took Alfred's
driver's license to cash the check.  The bank supervisor thought
there were irregularities with the signature on the check and
called Sylvester Samuel to inquire about the transaction. Samuel
asked the bank supervisor to call the police. The bank's
supervisor did so. After waiting for approximately 25 minutes,
Alfred left the bank, leaving his driver's license and the check
behind.

Thereafter, Alfred drove to the Hibiscus Branch of Banco
Popular ("BPPR Hibiscus"). Alfred alleges he was there to
activate a credit card. The government claims Alfred tried to
cash the same check Alfred had attempted to cash in Red Hook at
BPPR Hibiscus. The branch manager of BPPR Hibiscus testified
that Alfred attempted to cash a check against the Samuels'
account. BPPR Hibiscus called the police.

*United States v. Alfred*
14-cr-32
Order
Page 3

Detective Bougouneau, of the Virgin Islands Police
Department, received a dispatch that there was a forgery
occurring at BPPR Hibiscus and the dispatcher mentioned Alfred
by name. Bougouneau recognized Alfred's name from his
conversation with the officer who had taken the Samuels'
complaint previously.

Alfred waited thirty minutes at BPPR Hibiscus.  After the
thirty minutes, Bougouneau entered BPPR Hibiscus. The teller
signaled Bougouneau towards Alfred.  Bougouneau then went to
Alfred, and stated he would like to speak to Alfred. Bougouneau
explained to Alfred why Bougouneau was there, and asked Alfred
to come with him back to Bougouneau's office.

After speaking with Alfred, Bougouneau spoke with the
branch manager at BPPR Hibiscus.  The branch manager informed
Bougouneau that Alfred had come to the bank in order to cash a
check.  The branch manager stated that Alfred had attempted to
cash the check in Red Hook, but it took so long that Alfred had
come to BPPR Hibiscus.  The branch manager told Bougouneau that
she knew the name of Sylvester Samuel, because BPPR Hibiscus had
recently closed Samuel's accounts for him.

Bougouneau handcuffed Alfred and took Alfred to
Bougouneau's office in Barbel Plaza, St. Thomas, Virgin Islands.
There, Alfred was interviewed by Detective Jose Allen. That

*United States v. Alfred*
14-cr-32
Order
Page 4

interview was videotaped. Before the interview began, Alfred was given a written warning as to his rights (the "advice of rights form"), and the advice of rights form was read to Alfred. The advice of rights form consisted of numbered sentences which informs defendants of their right to remain silent, their right to counsel, and the ability of anything the defendant says to be used against him or her in a court of law. The advice of rights form also includes a waiver the defendant may sign at the bottom of the form. After reading each portion of the warnings, Alfred was asked if he understood them. Alfred indicated that he did. Alfred then signed the advice of rights form.

Alfred did not sign the waiver at the bottom of the form. The waiver portion contains the handwritten notation, "Willing to speak and answer questions accordingly."  On the tape of the interrogation, Allen can be heard explaining to Alfred that he is going to write "willing to speak and answer questions accordingly," on the advice of rights form. Alfred agrees to it.

During the warnings, Alfred asked he would get a lawyer immediately, in the event he wanted a lawyer.  Allen informed Alfred that an attorney could not be appointed until the next day, when Alfred was before the Magistrate.

Alfred admitted that he attempted to cash a check for $3,500 against an account belonging to Sylvester Samuel, and

*United States v. Alfred*
14-cr-32
Order
Page 5

Alfred acknowledged that the driver's license left at the bank belonged to him.

Alfred asked to use the restroom. He was permitted to do so, but Allen instructed Alfred to empty everything from his pockets before going to the restroom.  Alfred removed two debit cards from his pocket.  Allen made copies of debit cards before returning them to Alfred.

The next day, Alfred went before the Magistrate Judge for a probable cause hearing.

Sometime thereafter, the government obtained copies of cancelled checks, deposit slips, checking account transactions, debit statements, and various bank statements belonging to Alfred without Alfred's consent or a warrant.

Alfred seeks to have the bank documents, the copies of his personal effects, and his statement suppressed.  He also asks that this Court exclude the video of his interrogation under rule 403.

## II.   <u>DISCUSSION</u>

### A. Fourth Amendment

"The Fourth Amendment to the Constitution provides: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

*United States v. Alfred*
14-cr-32
Order
Page 6

probable cause . . . . The touchstone of the Fourth Amendment is

reasonableness.' " *United States v. Price*, 558 F.3d 270, 277 (3d

Cir. 2009) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250

(1991)). "Therefore, the Fourth Amendment does not prohibit all

searches--only those that are unreasonable." *Price* at 277.

"Searches conducted outside the judicial process, without

prior approval by a judge or magistrate, are *per se* unreasonable

under the Fourth Amendment subject only to a few specifically

established exceptions." *Katz v. United States*, 389 U.S. 347,

357 (1967) "Such exceptions are based on the Supreme Court's

determination that a particular search is reasonable, that is,

that the government's legitimate interests in the search

outweigh the individual's legitimate expectation of privacy in

the object of the search." *United States v. Salmon*, 944 F.2d

1106, 1120 (3d Cir. 1991).

The Fourth Amendment applies with equal force regardless of

whether a search is conducted by federal, state, or territorial

officers. The Supreme Court has held that:

> [E]vidence obtained by state officers during
> a search which, if conducted by federal
> officers, would have violated the
> defendant's immunity from unreasonable
> searches and seizures under the Fourth
> Amendment is inadmissible . . . . In
> determining whether there has been an
> unreasonable search and seizure by state
> officers, a federal court must make an
> independent inquiry, whether or not there

*United States v. Alfred*
14-cr-32
Order
Page 7

> has been such an inquiry by a state court,
> and irrespective of how any such inquiry may
> have turned out.

*Elkins v. United States*, 364 U.S. 206, 223-24 (1960); *See also*
*United States v. Striver*, 9 F.3d 298, 300 (3d Cir. 1993).

The prosecution bears the ultimate burden to prove, by a preponderance of the evidence, that the challenged evidence is admissible. *United States v. Matlock*, 415 U.S. 164, 177 (1974); *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

**B. Fifth Amendment**

To safeguard an individual's Fifth Amendment privilege against self-incrimination, the Supreme Court held that the government may not introduce statements made by an individual, who is subject to "custodial interrogation," unless he first has been given his *Miranda* warnings. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 445.

Since *Miranda*, the United States Court of Appeals for the Third Circuit has set forth two factors the courts must consider in determining whether there has been "custodial interrogation." First, a court must "determine whether the suspect was in 'custody.'... If the suspect was in 'custody,' the court then

*United States v. Alfred*
14-cr-32
Order
Page 8

must decide whether the police interrogated him." *United States v. Mesa*, 638 F.2d 582, 585 (3d Cir. 1980) (citing *Orozco v. Texas*, 394 U.S. 324(1969) and *Rhode Island v. Innis*, 446 U.S. 291 (1980)). Interrogation has been defined as any "express questioning or its functional equivalent." *Innis*, 446 U.S. at 300-301. This definition includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.*

### III. <u>ANALYSIS</u>

#### A. Warrantless Arrest

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck v. State of Ohio*, 379 U.S. 89, 96 (1964). "States must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)(internal quotation omitted). Where someone

*United States v. Alfred*
14-cr-32
Order
Page 9

is arrested without a warrant, generally that individual should receive a judicial determination of probable cause within 48 hours of the arrest. *See id*. at 56.

"[W]hether an arrest has occurred depends upon an objective, not subjective, evaluation of what a person innocent of a crime would have thought of the situation, given all of the factors involved. When an arrest has occurred depends in each case upon an evaluation of all the surrounding circumstances. Primary among these is a determination of whether or not the defendant was free to choose between terminating or continuing the encounter with the law enforcement officers." *U. S. v. Johnson*, 626 F.2d 753, 755 (9th Cir. 1980) *aff'd*, 457 U.S. 537 (1982). Alfred was put into handcuffs at BPPR Hibiscus, and transported to a police station. At that point, an objective citizen who was in those circumstances would likely not feel free to leave, or as though he could terminate the encounter. As such, Alfred was then under arrest.

Both parties concede there was no warrant for Alfred's arrest when he was detained at BPPR Hibiscus.  As such, the Court must determine whether, at the time Alfred was arrested at BPPR Hibiscus, "the facts available to the officers at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been committed." *Beck*, 379

*United States v. Alfred*
14-cr-32
Order
Page 10

U.S. at 96.  At the time of Alfred's arrest, the arresting officer had the following pieces of information: (1) the Samuels had filed a complaint with VIPD alleging that Alfred had forged checks against their accounts; (2) Alfred had attempted to cash a check at two different BPPR branches; (3) the BPPR Hibiscus branch manager recognized the Samuels' name on the check Alfred tried to cash, because the Samuels had recently closed their accounts; (4) there had been a dispatch specifically naming Alfred, and stating that a check forgery was ongoing at BPPR Hibiscus.

Considering all those facts together, the Court finds that they "would warrant a man of reasonable caution in the belief that an offense has been committed." *Beck*, 379 U.S. at 96.  As such, the arrest was lawful when it was made.

Alfred was arrested in the early afternoon. He was presented to the Magistrate the next morning.  Bouggoneau testified that the reason for the brief delay was the Magistrate's schedule.  The Magistrate, he stated, only does probable hearings beginning at 9:00 AM unless the police had made prior arrangements with the Magistrate. Given the short period of the delay, and the logistical reason behind it, the Court does not believe it was unreasonable.

*United States v. Alfred*
14-cr-32
Order
Page 11

## B. Interrogation

The Supreme Court stated in Miranda, that authorities are obligated to advise a person taken into custody of "the right to consult with a lawyer and to have the lawyer with him during interrogation." *Miranda*, 384 U.S. at 471. Yet, in the years since *Miranda*, the Supreme Court has consistently refrained from constructing a particular formula for the warning. In *Duckworth*, the Court held the following.

Reviewing courts are not required to examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda*."

*United States v. Warren*, 642 F.3d 182, 184 (3d Cir. 2011). It is also acceptable, when the police are advising defendants of their rights, for police to answer questions about how the rights will operate in their jurisdiction.  For example, a police officer may explain the process for appointment of counsel in their jurisdiction. *See Duckworth v. Eagan*, 492 U.S. 195, 203-04 (1989)(stating that police officer explanation during an advice of rights, in response to a suspect's question about appointment of counsel, about the timeline for appointment of counsel was permissible).

The Court carefully reviewed the tape of the interrogation, and the *Miranda* warnings given therein, in its entirety.  In doing so, the Court was struck by how thorough the warnings were.  The warnings were read to Alfred, Alfred was permitted to

ask questions about them, and Alfred was given a document
containing the warnings.  Alfred was informed that he had a
right to counsel being present while he was interrogated, and
that he had a right to remain silent. Allen's explanations were
as close to a textbook example of a valid *Miranda* warning as
could be expected.

Once a suspect has been advised of his rights, the suspect
must "unambiguously" invoke his right to remain silent or his
right to counsel in order for those protections to attach. *See
Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010)(holding that a
suspect had to unambiguously invoke his right to silence in
order for *Miranda* to require law enforcement cease questioning);
*Davis v. United States*, 512 U.S. 452, 461 (1994)(requiring a
suspect to unambiguously invoke his right to counsel). Simply
remaining silent is insufficient to invoke the right to remain
silent. *Berghuis*, 560 U.S. at 380-82. Ambiguous or equivocal
statements are also insufficient to invoke one's *Miranda* rights.
*Id.* at 381.

Alfred argues that through his question about the
availability of counsel, he invoked his *Miranda* rights.  He also
argues that his refusal to answer certain questions invoked his
*Miranda* rights.  However, neither of these actions is enough to
"unambiguously" invoke Alfred's rights.  A reasonable law

enforcement officer would not necessarily have understood a question about the timing involved in the appointment of counsel as a demand for an attorney. *See, e.g.*, *Davis*, 512 U.S. at 455, (the statement "[m]aybe I should talk to a lawyer" was not an unambiguous request for counsel); *United States v. Shabaz*, 579 F.3d 720, 819 (7th Cir. 2012)(the question "am I going to be able to get an attorney" was not an unambiguous request for counsel). Silence or refusal to answer certain questions does not constitute an unambiguous invocation of the right to remain silent. *See Berghuis*, 560 U.S. at 380-82.

As Alfred was advised of his rights under *Miranda*, and did not unambiguously invoke either the right to counsel or the right to remain silent, the interrogation in this matter passed Constitutional muster.

## C. Search of Personal Effects

> The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions. One of them permits warrantless searches incident to custodial arrests, and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained.

*United States v. Edwards*, 415 U.S. 800, 802-03 (1974)(internal quotations omitted). A legal search incident to arrest is limited to the arrestee's person and to the area within his

*United States v. Alfred*
14-cr-32
Order
Page 14

immediate control, from which he might gain possession of destructible evidence. *See United States v. Myers*, 308 F.3d 251, 267 (3d Cir. 2002).

> It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. If need be, *Abel v. United States*, 362 U.S. 217, settled this question. There the defendant was arrested at his hotel, but the belongings taken with him to the place of detention were searched there. In sustaining the search, the Court noted that a valid search of the property could have been made at the place of arrest and perceived little difference.

*Id.* 803.

In this case, the debit cards that Allen obtained from Alfred, had been contained in Alfred's pocket. That is, they were somewhere within his immediate control. The arrest conduct in this matter was financial in nature – Alfred was alleged to have forged checks. Alfred's financial information or debit cards might be evidence and, if in his possession, the cards could easily be discarded or destroyed. As such, the search would have been lawful if undertaken immediately upon Alfred's arrest. Delaying the search until Alfred was at the police station does not undermine its Constitutional underpining. *See id.* at 803.

**D. Obtaining Bank Records/Statements**

*United States v. Alfred*
14-cr-32
Order
Page 15

Alfred challenges the government's collection of his financial documents from his bank. In considering whether obtaining such records violated the Fourth Amendment, the Supreme Court stated that

> On their face, the documents subpoenaed here are not respondent's "private papers." Unlike the claimant in *Boyd*, respondent can assert neither ownership nor possession. Instead, these are the business records of the banks. As we said in *California Bankers Assn. v. Shultz, supra*, 416 U.S., at 48-49, 94 S.Ct., at 1511, 39 L.Ed.2d, at 833, "(b)anks are . . . not . . . neutrals in transactions involving negotiable instruments, but parties to the instruments with a substantial stake in their continued availability and acceptance." The records of respondent's accounts, like "all of the records (which are required to be kept pursuant to the Bank Secrecy Act,) pertain to transactions to which the bank was itself a party.
>
> . . . .
>
> Even if we direct our attention to the original checks and deposit slips, rather than to the microfilm copies actually viewed and obtained by means of the subpoena, we perceive no legitimate "expectation of privacy" in their contents. The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.
>
> . . . .
>
> The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information

*United States v. Alfred*
14-cr-32
Order
Page 16

> revealed to a third party and conveyed by him to
> Government authorities, even if the information is
> revealed on the assumption that it will be used
> only for a limited purpose and the confidence
> placed in the third party will not be betrayed.

*United States v. Miller*, 425 U.S. 435, 440-43 (1976). The records and information that the government obtained from Alfred's bank consist of: copies of cancelled checks, deposit slips, checking account transactions, debit statements, and various bank statements. It is clear that these documents fall completely within the holding of *Miller*. *See id.* (addressing bank records, check slips, and deposit slips.) The records the government obtained were business records, to which the bank was a party, and the information contained within them was voluntarily relinquished by Alfred to the bank. As such, the government's receipt of these documents does not constitute a search within the meaning of the Fourth Amendment. *See id*.

The premises considered, it is hereby

**ORDERED** that Alfred's motion to suppress is **DENIED**.

S\_____

**Curtis V. Gómez**
**District Judge**